**George E. MILLER, Plaintiff-Appellant,**

v.

**CULVER COMMUNITY SCHOOLS CORPORATION, Joseph L. Currens, Robert N. Robertson, Eldon P. Davis, John A. Benedict, Robert Douglas Miller, Terrance Kelsey, Alvin L. Triplet, as members of the governing body of the Culver Community Schools Corporation, and William F. Mills, as Superintendent of the Culver Community Schools Corporation, Defendants-Appellees.**

**No. 3–885A229.**

Court of Appeals of Indiana,
Third District.

May 29, 1986.

Joseph V. Simanski, Plymouth, for plaintiff-appellant.

Thomas O. Mulligan, Knox, for defendants-appellees.

GARRARD, Judge.

George E. Miller brought a breach of contract action against the Culver Commu-

nity Schools Corporation, including its school board members and its superintendent, William F. Mills (collectively referred to as "School Board"). In his complaint Miller alleged that the School Board failed to give him timely, written notice of its decision not to renew his contract as principal for the Culver Elementary School. The trial court concluded that Miller had received timely, written and adequate notice of the School Board's decision not to renew and that the School Board had fully complied with the dictates of IC 20–6.1–4–17 et seq. regarding school principal contracts.

Miller now appeals raising a single issue for our review:

"Whether under the Indiana statute pertaining to nonrenewal of principal's contracts, IC 20–6.1–4–17.2, the governing body of the Culver Community Schools Corporation failed to give appellant Miller notice on or before February 1, 1983, that his principal's contract would not be renewed for the 1983–84 school year."

As Miller is appealing from a negative judgment, we first note that we will not reverse the judgment of the trial court unless it was contrary to law. *Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59, 67. In other words, Miller must establish that the evidence is without conflict and leads to but one conclusion which is opposite to the conclusion reached by the trial court. *Woodward Ins., Inc. v. White, supra; Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 95; *Cooper v. LaPorte Bank and Trust Co.* (1981), Ind.App., 415 N.E.2d 778, 779.

IC 20–6.1–4–17.2 [1] details the procedure by which a school corporation must inform one of its school principals that his principal's contract will not be renewed. The principal is entitled to written notice of this refusal to renew on or before February 1 of the year his contract was to expire, or else the contract will be reinstated for the next school year. IC 20–6.1–4–17.2 does not specify the manner in which the written notice is to be delivered.

As a general rule, where a statute requires notice but does not specify the manner of delivery, any method selected for delivery is sufficient so long as it provides the person to be notified with actual notice. *Andrews v. Minter Coal & Coke Co.* (1929), 90 Ind.App. 320, 168 N.E. 869; 66 C.J.S. *Notice*, Sec. 18(c) at 659 (1950); *Becker v. Crown Central Petroleum Corp.* (1975), 26 Md.App. 596, 340 A.2d 324. Actual notice is that notice which "has been directly and personally given to the person to be notified." *Wienke v. Lynch* (1980), Ind.App., 407 N.E.2d 280, 286; *Rogers v. City of Evansville* (1982), Ind.App., 437 N.E.2d 1019, 1027; 2 Pomeroy's Equity Jurisprudence, Sec. 595, at 611 (5th ed. 1941). Whether or not actual notice has been given is a question of ultimate fact, provable by any competent evidence. *Rogers*, 437 N.E.2d at 1027; *Wienke*, 407 N.E.2d at 286; *Willard v. Bringolf* (1936), 103 Ind.App. 16, 29, 5 N.E.2d 315, 321 (the determination as to whether actual notice was given is "a mere question of fact and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion"). This principal has been long applied and is aptly explained in 2 Pomeroy's Equity Jurisprudence, Sec. 595, at 612:

---

1. The pertinent portion of IC 20–6.1–4–17.2 reads:

"On or before February 1 of the year during which a principal's or assistant principal's contract is due to expire, the governing body of the school corporation by which the principal or assistant principal is employed, or an employee at the direction of the governing body, shall give the principal or assistant principal written notice of renewal or refusal to renew his contract for the ensuing school year. If no notice is given on or before February 1 of the year during which the principal's or assistant principal's contract is due to expire, the contract then in force shall be reinstated only for the ensuing school year."

"[T]he evidence may be so direct, positive, and overwhelming as to establish the fact that the information was personally given and received in the most convincing and unequivocal manner, or it may be entirely indirect and circumstantial. Wherever, from competent evidence, either direct or circumstantial, the court or the jury is entitled to infer, *as a conclusion of fact, and not by means of any legal presumptions*, that the information was personally communicated to or received by the party, the notice is actual. In short, actual notice is a conclusion of fact, capable of being established by all grades of legitimate evidence." (emphasis in original; footnote omitted)

See also *Mishawaka-St. Joseph Loan & Trust Co. v. Neu* (1935), 209 Ind. 433, 196 N.E. 85; 66 C.J.S. *Notice*, Sec. 22(a), at 675–6 (1950).

■ From the foregoing it follows that for Miller to secure a reversal of the negative judgment entered against him by the trial court, he must establish that the evidence is without conflict and leads to the conclusion that he did not receive actual notice, contrary to the trial court's conclusion that he did. We must conclude that Miller has failed in this task.

Superintendent Mills sent Miller a letter on November 24, 1982 informing Miller that he was going to recommend to the School Board that Miller's contract as principal should not be renewed. Miller met with Superintendent Mills to discuss this matter on November 30, 1982. The School Board then voted to give Miller preliminary written notice that it was considering not renewing his contract as principal, which notice was sent December 7, 1982. IC 20–6.1–4–17.3 (preliminary written notice required 30 days before written notice of refusal to renew). Miller then requested and had private conferences with both Superintendent Mills and the School Board

pursuant to IC 20–6.1–4–17.3 in December of 1982 and January of 1983. No resolution of the matter was reached during these meetings.

Superintendent Mills testified that on January 25, 1983 he sent Miller written notice through interschool mail of the School Board's decision not to renew Miller's contract as principal. There was also testimony to the effect that no documents sent through the interschool mail system had ever been lost. Superintendent Mills testified that the notice was on Miller's desk by January 25, 1983. Mills' testimony was confirmed by his secretary, who typed the notice, sent the letter through interoffice mail, and called Miller's secretary to confirm that the notice was placed on Miller's desk. Mills' secretary confirmed that the letter was on Miller's desk at the request of Mills. Miller's secretary also testified that the letter was on Miller's desk on January 25, 1983. It was stipulated that Miller was not in school on the 25th, 26th or 28th of January as his wife was ill, but that he was in school on the 27th and 31st of January as well as February 1st, the deadline by which written notice not to renew his contract had to reach him. IC 20–6.1–4–17.2.

Miller steadfastly denied ever receiving Superintendent Mills' letter of January 25, 1983, detailing the School Board's 7–0 vote not to renew his contract as principal for the 1983–84 school year. Miller further denies receiving any written notice of the School Board's final decision not to renew his contract as principal.

The trial court, as the factfinder, had a great deal of evidence before it from which it could conclude that Miller *in fact* received "timely, written and adequate notice" of the School Board's refusal to renew his contract as principal. At best, Miller has demonstrated that the evidence was conflicting as to whether he received written notice. We will not reweigh the evidence. As he is appealing from a negative judgment and as he has not shown the

evidence to be without conflict, leading only to the conclusion that he received no notice, Miller's appeal must be rejected. From all the evidence the trial court could have reasonably inferred that Miller did receive actual notice.[2] The trial court's conclusion is not contrary to law.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

2. To the extent that Miller believes his receipt of the written notice must be witnessed by someone for a trier of fact to conclude that written notice was given, we are reminded of the following language of our Supreme Court in *State ex rel. Sights v. Edwards* (1949), 228 Ind. 13, 18, 88 N.E.2d 763, 765: "A party may not escape the effect of a required written notice by declining to receive it." This rationale is equally applicable to the present case where the circumstantial evidence clearly shows that Miller received the written notice from Superintendent Mills. Miller would not be able to defeat the effect of the notice by not opening the envelope from Superintendent Mills or refusing to receive it and we see no reason why he should be able to defeat such notice with a simple denial. It was for the trial court to judge the credibility and demeanor of the witnesses and weigh all the testimony and other evidence in reaching its determination.